UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

UNITED STATES OF AMERICA,          )
                                   )
        Plaintiff,                 )        No. 6:20-CR-21-CHB-HAI-3
                                   )
v.                                 )
                                   )        RECOMMENDED DISPOSITION
ROBERT TYLER SMITH,                )
                                   )
        Defendant.                 )
                                   )

*** *** *** ***

On referral from District Judge Boom (D.E. 110), the Court considers reported violations

of supervised release conditions by Defendant Robert Tyler Smith.

Judge Boom entered Judgment against Defendant in May 2021 after Defendant pleaded

guilty to one count of conspiracy to distribute 500 grams or more of a methamphetamine

mixture. D.E. 95. Defendant was sentenced to 41 months of imprisonment followed by three

years of supervised release. *Id.* Defendant was released on March 17, 2023.

In June 2023, the United States Probation Office ("USPO") informed the Court that

Defendant had been arrested, but failed to report the arrest within 72 hours, as required by his

conditions of release. D.E. 109. Defendant explained that he had forgotten that requirement.

The arrest was for public alcohol intoxication, and the charge was ultimately dismissed. The

USPO recommended that no action be taken at that time, and Judge Boom approved the request.

*Id.*

**I.**

On July 7, 2023, the USPO issued the Supervised Release Violation Report ("the Report") that initiated these proceedings. The Report charges a single violation of the condition that prohibits commission of another federal, state, or local crime. According to the Report,

> On July 1, 2023, the defendant was arrested by the Corbin, Kentucky, Police Department and charged with the following: Operating a Motor Vehicle Under the Influence of a Substance-K.R.S. § 189A.010(1C), a Class B misdemeanor; Disregarding a Stop Sign-K.R.S. § 189.330, a violation; Improperly on Left Side of Road-K.R.S. § 189.345, a violation; Failure to or Improper Signal-K.R.S. § 189.380, a violation; and Failure to Produce Insurance Card-K.R.S. § 304.39-117, a violation. The case is filed under Knox County, Kentucky, District Court case #23-T-3634.

The accompanying citation states,

> Corbin Police Department received a complaint from CTA employees reporting a male employee displaying erratic behavior and being combative towards other employees and appeared to be intoxicated. Upon my arrival I observed a white GMC Terrain leaving the parking lot at a high rate of speed. Employees advised Cpl. Lonnie Sawyers that this was the male that they had called about. I observed the above fail to come to a stop at the stop sign located at the intersection of Future Business Drive and KY Highway 3041. Above weaved into the left hand side of the roadway and failed to utilize turn signal while making a left hand turn onto KY Highway 3606. Upon making contact with the driver, I observed the driver to appear sweating and had glossy eyes. Above could not produce valid insurance card on the vehicle. I asked above to step out of the vehicle to conduct SFST. Horizontal gaze nystagmus tests indicate equal pupil size and equal tracking. Above did not show resting nystagmus. I observed lack of smooth pursuit present in both left and right eyes; distinct and sustained nystagmus at maximum deviation in both left and right eyes; and onset of nystagmus at angle prior to 45 degrees in both left and right eyes. Above showed 6 of 6 clues on HGN. Vertical gaze nystagmus was also present. Above advised that he had hip surgery and was unable to conduct balance tests due to having a rod in his right leg. Due to this balance test was not performed due to safety of above. Above was transported to Baptist Health Corbin, read implied consent, made contact with an attorney, and once inside the hospital refused blood test. Above continued to show erratic behavior while inside Baptist Health.

Violation #1 is a Grade C violation.

2

On July 13, 2023, the Court conducted an initial appearance pursuant to Rule 32.1. D.E. 112. Defendant made a knowing, voluntary, and intelligent waiver of the right to a preliminary hearing. The government recommended that Defendant be released on his current conditions of supervision, as well as the additional conditions that he remain on home detention, does not drive, and submit to weekly drug testing. He was released, with a status conference set for August 28, 2023. *Id.*

The status conference was continued to allow time for the state case to be resolved. On December 13, 2023, the USPO issued an Addendum to the Report, which updated the Court on the state charges described in Violation #1. It says:

> On December 7, 2023, the defendant entered a guilty plea to Disregarding a Stop Sign-K.R.S. § 189.330 and Failure to Produce Insurance Card-K.R.S. § 304.39-117. Smith was fined $100 and ordered to pay $143 in court cost in regard to Disregarding a Stop Sign and fined $250 in regard to Failure to Produce Insurance Card. All remaining charges were dismissed.

The planned status conference was eventually conducted as a teleconference on December 14, 2023. D.E. 125. The Court set a final hearing for January 18, 2024. *Id.* It was later continued to February 20. D.E. 128.

On February 20, 2024, the Court decided to not conduct a final hearing on the Report and Addendum. Defendant had submitted a urine specimen that day that tested positive for fentanyl upon instant testing. The Court reasoned that, if confirmed, this positive test could lead to additional violation charges. Defendant was released with the added condition that he reside with his current girlfriend and codefendant Ms. Wolfe. The final hearing was set for March 1.

On February 26, 2024, the USPO issued a Second Addendum containing two new violation charges. The Second Addendum reports that Abbott Labs provided results on February 25 indicating Defendant's specimen contained a fentanyl metabolite. Violation #2 alleges a

Grade C violation of condition that prohibits unlawful use of a controlled substance.  Violation #3 charges a violation of the condition prohibiting commission of another federal, state, or local crime and the condition prohibiting unlawful controlled-substance possession.  Citing the Sixth Circuit's decision that use is equivalent to possession, Violation #3 is a Grade B violation because Defendant's fentanyl use and possession, on account of his prior drug conviction, would be a Class E felony under 21 U.S.C. § 844(a).  Based on the Second Addendum, the Court issued a warrant for Defendant's arrest.

Defendant appeared for the March 1 hearing and was arrested.  The Court conducted an initial appearance on the charges in the Second Addendum.  D.E. 134.  The Court set a final hearing following a knowing, voluntary, and intelligent waiver of the right to a preliminary hearing.  The government made an oral motion for interim detention; Defendant did not argue for release.  *Id*.  Based on the heavy defense burden under 18 U.S.C. § 3143(a), the undersigned remanded Defendant to the custody of the United States Marshal.  *Id*.

At the final hearing on March 15, 2024, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583.  D.E. 136.  Defendant competently entered a knowing, voluntary, and intelligent stipulation to all three violations.  *Id.*  For purposes of Rule 32.1 proceedings, Defendant admitted the factual basis for Violations #1, #2, and #3 as described in the Report and Addenda (under the preponderance-of-the-evidence standard).  Specifically, Defendant admitted all the state charges in Violation #1 (including the ones dismissed in state court).  And he admitted knowingly using a drug unlawfully for Violations #2 and #3.  Defendant insisted, however, that he did not knowingly ingest fentanyl.  He took what he thought was a Xanax that he knew was obtained unlawfully.  The United States thus established the violations under the standard of section 3583(e).

4

## II.

The Court has evaluated the entire record, including the Report, Addenda, and accompanying documents and the sentencing materials from the underlying Judgment in this District. Additionally, the Court has considered all the section 3553 factors imported into the section 3583(e) analysis.

Under section 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant pleaded guilty to conspiracy to distribute 500 grams or more of methamphetamine mixture, a Class A felony. *See* 21 U.S.C. § 846. Such a conviction carries a five-year maximum period of incarceration upon revocation pursuant to 18 U.S.C. § 3583(e)(3).

The Policy Statements in Chapter 7 of the Sentencing Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438-39 (6th Cir. 2007). Under section 7B1.1, Defendant's admitted conduct would qualify as Grade C for the first two violations and Grade B for Violation #3. Given Defendant's criminal history category of II (the category at the time of the conviction in this District) and Grade B violation,[1] Defendant's range, under the Revocation Table of Chapter Seven, is six to twelve months. U.S.S.G. § 7B1.4(a).

A court may re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration imposed due to the violation. *See* 18 U.S.C.

---

[1] *See* USSG § 7B1.2(b) ("Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade.").

§ 3583(b) & (h).  Defendant's conviction carries no maximum term of supervised release.  *See* 18 U.S.C. § 3583(h); 21 U.S.C. 841(b)(1)(C).

### III.

At the final hearing, the parties presented a jointly recommended penalty:  revocation with twelve months and a day of imprisonment, followed by one year of supervised release.  The government's lawyer explained that, on February 20, he intended to request eight months of incarceration with no supervision to follow.  But this was before the urine test that was positive for fentanyl.  That positive drug test increased the need for deterrence and to protect the public.

The government acknowledged that Defendant had been drug-tested frequently, with many negative results.  And Defendant was working productively for a while.  Defendant was also, for a time, on both federal supervision and state bond.  He was on "the thinnest of ice" when he took what turned out to be fentanyl.  The government's lawyer explained he was reticent to recommend a twelve-months-and-a-day sentence but agreed to it because the possibility for good-time credit would be a meaningful opportunity for Defendant to practice compliance.

According to the defense, Defendant wants the twelve-month-and-a-day sentence because its length renders him eligible for halfway house placement.  Defendant wants more time after release to find a suitable home so he does not have to return to his mother's house.  The defense said his "volatile relationship" with his mother contributed to his seeking Xanax "to cope."  In another recent Court appearance, Defendant had a black eye that he said had been caused by his mother.

The defense said Defendant is likely able to return to work at Flowers Bakery.  He would like to retire there.

The defense stressed Defendant's limited (Category II) criminal history.  Defendant became addicted to pain pills following a 2017 ATV accident.  And he committed crimes to support his pill addiction.  The defense said he has an alcohol problem and needs access to drug and alcohol treatment.  Defendant already has a condition prohibiting alcohol consumption.  D.E. 95 at 5 (Special Condition #1).  Defendant was also said to need mental health counseling.

Defendant declined to address the Court.  But his lawyer said he wanted the Court to know he was very disappointed with himself.

### IV.

To determine an appropriate revocation term of imprisonment, the Court has considered all the statutory factors imported into the § 3583(e) analysis, as well as the Guidelines Range.  Congress mandates revocation in a case of this nature.  By statute, the Court must revoke Defendant because he possessed a controlled substance.  *See* 18 U.S.C. § 3583(g)(1); *see also United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000) (equating use with possession).  Subsection 3583(g)(1) calls for revocation when the defendant is found to have possessed a controlled substance in violation of the mandatory condition that the defendant not unlawfully possess a controlled substance.  Subsection 3583(d) provides an alternative to revocation and imprisonment when a drug treatment program is appropriate.  *See Crace*, 207 F.3d at 835.  Neither side argued for treatment as an alternative to incarceration.

The presence of a Grade B violation also means that revocation is recommended under the Guidelines.  U.S.S.G. § 7B1.3(a)(1) ("Upon a finding of a Grade A or B violation, the court shall revoke probation or supervised release.").  Even if revocation were not mandatory, revocation would be appropriate in this case due to the nature of the violation.

One factor concerns the nature and circumstances of Defendant's conviction. *See United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2011) (explaining that this sentencing factor focuses upon the original offense rather than the violations of supervised release). Defendant participated in a meth trafficking conspiracy to feed his pill habit. He was found responsible for 500 to 1,500 grams of meth mixture. PSR ¶ 17. Here, we have a return to pill use, but no hint of a return to trafficking.

The Court next considers Defendant's history and characteristics. Defendant is noteworthy for the tragedy he has faced in his background. He was dealt an unfair hand in life, and the Court sympathizes with his desire to use substances for coping purposes.

Another factor considers the need for additional training and treatment. Defendant can obtain further drug and alcohol treatment under his existing release conditions. And the Court will recommend addition of a mental-health treatment condition.

Two other factors, the need to protect the public and the need to deter criminal conduct, also come into play here. There is always a protection incentive for Defendants who have trafficked drugs in the past. And illicit drug use heightens this incentive. The recommended sentence is largely intended to deter Defendant's opioid use and to protect the public from any temptation he may have to interact with the black market. Defendant put the public in danger as well when he drove under the influence and disobeyed traffic laws.

The most important factor in this case is the breach of the Court's trust. The Guidelines suggest that the ***primary*** wrong in the supervised release context is the violation of the Court's trust by an offender. The particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation

and the criminal history of the violator."). The Court must impose a sentence that is sufficient, but not greater than necessary, to address Defendant's breach of trust and the other statutory goals imported into section 3583(e). Here, Defendant admitted driving under the influence of a substance and taking a pain pill that turned out to contain fentanyl—activities that put himself and others in danger. Defendant also denied his controlled substance use when it was first brought to light on March 1. Defendant was shown leniency last June when no action was taken due to his failure to report his arrest for alcohol intoxication. Defendant's underlying sentence was also well below his Guidelines Range.

One factor the Court must consider is the need to avoid unwarranted sentencing disparities. This factor is usually addressed, as here, by imposing a within-Guidelines sentence.

The recommended sentence balances the need to address Defendant's deception with the Court's and parties' expectation that he can and will do better in the future. The sentence, which allows for good-time credit and potential halfway house placement, provides an incentive for achievement. A one-year supervision period should be enough time to gauge whether Defendant has gotten on the right track. To further assist Defendant in putting his tragedies and substance use behind him, the Court will recommend that a status conference be scheduled six months after release.

**V.**

Based on the foregoing, the Court **RECOMMENDS**:

1.      That, upon his stipulation, Defendant be found guilty of all three Violations.

2.      Revocation with twelve months and a day of imprisonment, followed by one year of supervised release.

3.      Addition of a condition requiring participation in a mental-health treatment program at the discretion and direction of the probation officer.

4.      The addition of a condition requiring a status conference approximately six months after Defendant is released. **The probation officer shall promptly contact the undersigned after Defendant's release so this conference can be scheduled.**

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within **fourteen days** after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on Judge Boom's docket upon submission. If Defendant chooses to waive allocution, he **SHALL** do so on or before the deadline for filing objections.

This the 18th day of March, 2024.

Signed By:

*Hanly A. Ingram*

**United States Magistrate Judge**